Mr. Carpenter, welcome back. Thank you very much, Your Honor. May it please the Court, Kenneth Carpenter appearing on behalf of Ms. Karen Githens. Ms. Githens appeals the decision of the United States Court of Appeals for Veterans Claims. At issue in this case is the interpretation of 38 CFR 4.16a, specifically the reference to the instruction within that regulation to disregard non-service-connected disability or disabilities when the percentages of that regulation have been met. And in the judgment of the rating agency, such service-connected disabilities render the veteran unemployable. That and clause is what gets you in trouble, isn't it? I do not believe so, Your Honor, because in this case there are only two types of disabilities, service-connected disability and non-service-connected disability. The underlying decision in this case in 1996 made the factual determination that both service-connected disabilities and non-service-connected disabilities prevented Ms. Githens from employment. In combination. Well, it didn't say in combination, Your Honor. It just said both contributed to. And in our view, even if it had been in combination, the fact is under the direction of this regulation, once the service-connected disabilities meet a percentage threshold of 70% of combined disability for multiple disabilities or 60 for a single, then the instruction is you will disregard the non-service-connected disabilities. If you go on to make the judgment that those service-connected disabilities are what caused the unemployability, in this case it was a non-service-connected back injury, right? Incorrect, Your Honor. Both caused unemployability. And that was the original finding. Now we're going to facts, but it seems to me like facts. And that was the facts that were found in 1996. Excuse me, Your Honor. No, no, no. You go ahead. I'm happy to listen. In 1996, at JA-15, in the 1996 decision, the rating decision expressly stated that the medical records show that both service-connected and non-service-connected disabilities interfere with employment with the greater degree of disability resulting from the non-service-connected disability. But that is a balancing test that is not part of the equation under 416A. Once the predicate is met under 416A for the percentage of service-connected disabilities. But doesn't the regulation say you both meet the percentages and there's a judgment component? They make a judgment that it's those service-connected disabilities that caused the unemployability. And we believe that the 19- Did they make that judgment, you're saying? I believe they made that judgment in 1996, Your Honor. Except that the judgment that you just read to us talked about a combination of factors. Well, it talked about the medical records showing that both conditions, and it doesn't say in combination, and it does say that the non-service-connected were of a greater degree. However, in our view, the operation of 4.16A is triggered by the meeting of the service-connected disabilities by the percentages identified within the VA's regulation. And once you ring that bell, if you will, then any judgment simply goes to the fact that there is affirmative evidence to the contrary. There is no affirmative evidence to the contrary. And what was used in this case in 1996 and in every decision thereafter, including the Veterans Court decision, was the non-service-connected disabilities. And it is the use of those non-service-connected disabilities which is expressly prohibited by the language of 4.16A. It says you will disregard. And it either means that or it doesn't mean that. And the judgment involved here is only the judgment to make a determination based upon factors other than the non-service-connected disabilities. Now, Mr. Carpenter, I thought you were making a different argument, which in fact seemed to have more weight to it. Let us assume that the non-service-connected disabilities are insufficient to provide unemployability. Let us accept that when you add on top of that the service-connected disabilities, which alone would not be sufficient, but when added on top, the combination provides unemployability. You're not arguing that this is a basis for compliance with the statute of entitlement. I don't believe so, Your Honor. I don't read the regulation to talk about in combination. To me, the language is clear and direct. You will disregard the non-service-connected disabilities. So they get taken off the table. But isn't that strange? It doesn't reflect the reality. I'm sorry, Your Honor. You put me in a very difficult position because that's been my entire experience since I started practicing in this area, that the reality is denied. This, to me, is a critical question which arises in such circumstances where when you take the whole person after the service has contributed, you have an admitted situation of unemployability. I think that that is the case, Your Honor, when the service-connected disability percentages are not met for the provisions of the next section under B. And that at that point, you take in the totality. You take in the reality. But when you meet the percentage requirements, when you meet, as Ms. Giffens did here, the 70% in combination that her disabilities under the VA's rating schedule totaled a combined rating of 70, then she was entitled to have the express exclusion of the non-service-connected disabilities and, if you will, a presumption that it was her service-connected disabilities which met the percentage requirements that prevented her ability to follow substantial gainful occupation. Now, Mr. Carpenter, you read to me a section from this 96 finding, but of course that paragraph started with entitlement to individual unemployability is denied because claimant has not been found unable to secure or follow substantially gainful occupation. So the finding is rather clear. And you have to... we're in a Q case. It has to be a clear error. Where is clear error in this? Well, the clear error in this case, Your Honor, was the fact that this decision said she didn't meet the percentage requirements. She didn't get the benefit of 416A. They were making that determination implicitly under B, in which they were entitled to consider the non-service-connected disabilities and said that even in that circumstance she was not meeting that requirement. But the regulation says she meets the percentage requirements because, frankly, they did the math wrong. Was there ever a separate or distinct determination on Section A of 4.16? No, not in the 1996 decision that was subject to attack. How about later? Well, later it couldn't be because that became final. Later, in fact, there was a determination, but there were other factors involved. It should have been first a determination under A before you moved to B. Yes, because she met the percentage requirements. And in my view, because she met the percentage requirements, Your Honor, you never moved to B. See, because once you meet the percentage requirements, then you have to make the determination under A. That was the clear and unmistakable error here. What the Board found and what the Veterans Court found was this even-if determination based upon the non-service-connected disabilities. And that's where the legal error in this case comes, as opposed to the clear and unmistakable error. The clear and unmistakable error was in failing to do the math correctly. 4.16a applied. The Board conceded that 4.16a applied, and she was entitled to the benefit. And then they misapplied it by factoring in the non-service-connected disabilities, which the Veterans Court said was okay. They actually said in that sentence I wrote, as a result of service-connected disabilities. They were looking at the right thing. They said they were looking at the service-connected disabilities. That those service-connected disabilities, Your Honor. And they did not make her unemployable. That was their legal error because she met the requirements. They didn't consider this under 4.16a. The Board found that. Even the VA found that, that they made an incorrect decision in 1996 in relationship to 4.16a. I see I'm about to go into my rebuttal time. We'll save it for Mr. Carpenter. Mr. Pratt. Hi. Good morning, and may it please the Court. The Court should affirm the Veterans Court decision in this case. Ms. Githens misunderstands both what the RO and the Board and the Veterans Court found, and she also misunderstands the regulation at issue. What the Board and the RO found is that Ms. Githens' service-connected disability simply did not result in unemployability. Your Honor cited to the RO's decision, the very first sentence of that decision. If one also looks at the Board decision, what the Board said, quote, and the Board was applying a, to answer Your Honor's question. The Board said, quote, it was not clear and unmistakable that her service-connected disabilities alone led to her unemployability. And that's at page 60 of the joint appendix. But that's the premise. What about all of these rules? You take the people as you find them. She already had a number of disabilities that everyone agrees are not service-connected. When you pile the service-connection on top, let us accept that the total results in unemployability. Isn't the entire culture, I thought, of compensation of veterans, is that if service-connection contributes with a certain threshold perhaps, but let's assume that threshold is here met, that the statute needs to be reviewed and applied in a manner that favors the veteran rather than the other way around. Certainly that is true. Let me make a couple of points in response to Your Honor's question. First, I think our factual scenario is somewhat different from the scenario Your Honor just presented. Here, it was quite clear, based upon the record, that it was the non-service-connected disabilities that were the primary cause of unemployability. In fact, the board... Well, because they occurred later in time. But when you put them together, and let us just accept for the purpose of this inquiry, that the disabilities that existed because of the service-connection were there. And so when the new disabilities are piled on top of it, the total crosses the threshold. And under the regulation, in that situation, there simply wouldn't be a TDIU. What the regulation is designed to address is, and I can provide a hypothetical, it's designed to address a situation where we have a service member, for example, who suffers a severe head injury while in service. That head injury renders them unemployable. Two years after service, they're also in a car accident. And it so happens that the accident is severe, and the accident also renders them unemployable. The VA can't use that car accident as an excuse not to provide TDIU. In other words, just because you have two causes of unemployability... Isn't that what happened here? No. In 1996, the ROA said that the percentage requirements for individual employability are not met. That's A. And the notice shows that the primary cause of employment difficulty is due to non-service-connected disabilities. But what's the primary cause that's being referred to there? I believe they're referring to, well, primarily cervical disc disease, but there were some other non-service-connected injuries as well. And, in fact, if one looks at the record, and the Board specifically noted this, again, on page 6 of the Joint Appendix. This was the back injury? Yes, that's right. The Board noted that, in fact, in June of 1996, Ms. Githens had filed a disability claim. That was just approximately three months before the ROA decision here. And in her disability claim, it reflected that she could not work due to cervical disc disease, for which she's not service-connected. In other words, the primary cause of unemployability was a non-service-connected reason. Let's go back, though. If that back injury, it's the non-service-related injury, is the primary cause of her unemployability, how does that affect the percentages that you have to determine under Section 8? Well, I'm not sure how that would affect the percentages. I can only say that would be a different scenario than our case. The ultimate determination would have to be whether or not that injury caused her to be unemployable. And, again, that factual determination, the contrary determination was made here. The ROA and the Board both specifically found that it's not her service-connected disabilities alone that led to her unemployability. But they never did compute a percentage under Section 8. They did compute percentages under Section 8. There was an error in terms of how the percentages were computed. Point to me the record that refers to the percentage that they computed under Section 8. Sure. You can just give me a cycle. Oh, I'm sorry. I think I misunderstood your question. When they computed the percentages, well, I can cite the court to page 13 of the joint appendix. That's the very beginning of the ROA's decision. One can see, if one goes through, the ROA went disability by disability and assigned a percentage to each disability. And what did they total up to? At the time, I believe they totaled up to 70%. It was less than. So doesn't that meet the 70% threshold? I'm sorry. I believe it was less than 70%. It was an error, though. And when that error was brought to the attention of the Board, the case, the Veterans Court, the case was sent back to the Board. The Board then looked at the ROA's decision and said, yes, there was an error in terms of how the percentages were added up. So what's the total percentage, then, when they went back? I believe it was 80%, if I recall. So the error was in favor of Mrs. Gitzer. Yes, yes. So if she was 80% under Section 8, why do we need to move to Section B? Well, we don't here. What the Board said, though, is she's not entirely – remember, her whole claim was a TDIU claim, a total disability claim. So she didn't meet the 100% for that type of claim. She wasn't considered to be totally unemployable. But there's this fallback provision, which is the regulation issue here, which allows, in certain instances, for TDIU. Her claim was, well, you erred in calculating the percentages. So I met the percentages under A. And what the Board said was, yes, that's true. You met the percentages under A, but it doesn't make a difference at the end of the day because you only get TDIU if your unemployability is as a result of your service-connected disabilities. And here, your unemployability – they said two things. Number one, your unemployability was not a result of your service-connected disabilities. And then the Board went on and provided further explanation and said, look, it's actually primarily your non-service-connected disabilities that are causing your unemployability. So for all these reasons, unless the Court has further questions, for all these reasons, we respectfully request that the Court affirm the Veterans Court decision. Thank you, Mr. Prehein. Thank you. Mr. Carpenter, you have a little over five minutes. I'd like to direct the Court's attention to Appendix 17. At the bottom of that page, you'll see the, in capped letters, COMB colon 70 from 2990. They didn't miscompute it. They made a clear and unmistakable error when they said she didn't meet the percentages. The 70% number met the percentages. When she met the percentages, they were required to apply A. In the Board's decision at page 60, at the top of the page, after considering the conditions which met the scheduler criteria for 4.16A, the Board acknowledged that clear and unmistakable error. Then the semantic game we get into is whether or not this considered alone the service-connected disabilities. Every time, they pull out the rabbit of the non-service-connected disabilities. Never was Ms. Giffens' service-connected disabilities, her combined 70% disabilities, considered alone. Always were considered her non-service-connected disabilities. Once there was a clear and unmistakable error established, she was entitled to revision of that 1996 decision. That revision would have required the VA to do what the VA and the Board keep repeating, to consider alone the service-connected disabilities. That has never happened here. Because of the decision below, which misinterpreted 4.16A, as it had been misinterpreted by the Board before it, to include into that equation non-service-connected disabilities. That is not part of the equation. I have nothing further unless there's further questions. Thank you, Mr. Carpenter. That concludes our morning. Thank you very much. All rise.